[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 189 
 ON RETURN TO REMAND
The appellant was indicted and charged with first degree robbery. A jury found Ashley "guilty as charged" in the indictment. The trial court sentenced Ashley to 20 years' imprisonment.
Charles McNeal testified that the appellant worked for him in construction for approximately two months. McNeal testified that on October 4, 1989, he and the appellant got into an argument over a job and that he told the appellant that he did not need him any more. McNeal testified that on October 5, 1989, while he was on a job site, the appellant came by to be paid. McNeal further testified that he told the appellant that he would be paid at the end of the week. A fight ensued. McNeal stated that the appellant hit him once on his head with a sawed-off shotgun and that another blow with the gun broke his arm. McNeal testified that he was afraid of the appellant because the appellant had a sawed-off shotgun. McNeal further stated that the appellant took the keys to McNeal's truck out of his pocket.
Sergeant Patricia Howell of the Birmingham Police Department testified that she investigated the robbery. She testified that the appellant turned himself in. She further testified that the appellant admitted that he had a shotgun on the occasion of the fight, but that the gun was broken and unloaded. He told her that he took the gun to the job site because he wanted to scare McNeal. Sgt. Howell stated that the appellant returned McNeal's keys to her.
The appellant testified that McNeal attacked him and that he pulled the shotgun and hit McNeal with it in self-defense. The appellant also testified that he took McNeal's keys from his truck, not from McNeal's pocket, and that he locked the truck to make sure McNeal could not get to his gun, which the appellant said he kept in his truck.
 I
On June 28, 1991, this court remanded this case to the trial court for a hearing on the appellant's claim of ineffective assistance of trial counsel, which claim was timely raised in his motion for a new trial. 583 So.2d 1367. After a hearing the trial court entered an order finding that the appellant's trial counsel had effectively represented the appellant.
The appellant raises many issues on appeal concerning the effectiveness of his trial counsel. The case of Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984), provides a two-pronged test for evaluating counsel's performance. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense."Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. An attorney must render "reasonably effective assistance." The appellant arguing effective assistance of counsel must show that counsel's performance was unreasonable, considering all of the attendant circumstances. Strickland, 466 U.S. at 690,104 S.Ct. at 2066.
 (a)
The appellant first contends that defense counsel failed to adequately investigate the case. However, during the hearing on the motion for a new trial, trial counsel testified that he talked to the appellant on the day he was appointed as counsel for about 45 minutes and that on another occasion he had a conference with the appellant for 1 1/2 hours. He also testified that he interviewed Sgt. Howell, for approximately 1 hour and 45 minutes. He also talked to Carol Hubbard, the appellant's fiancee. He also testified that he asked the appellant for names of witnesses for trial, but that the appellant never gave any addresses so that those witnesses could be subpoenaed. Furthermore, trial counsel stated that based upon the knowledge *Page 190 
of the case, had he talked to other witnesses, their statements would not have changed the facts of the case. Based upon these facts, we conclude that defense counsel did sufficiently investigate this case. Furthermore, the appellant claims that counsel's direct examination of him was confusing and that questions were not asked in a logical order. We have reviewed the record and find that this allegation has no merit.
 (b)
The appellant also contends that trial counsel should have filed a motion to produce in order to find out whether a knife existed, which would support his theory of self-defense. The testimony by the appellant at trial was that he thought the victim was reaching for a knife. Even if McNeal had a knife, a motion to produce would have served no purpose unless the knife was in possession of law enforcement. There has been no evidence that this was the case. Moreover, trial counsel did a good job during the cross-examination of McNeal by suggesting that McNeal was armed and that he was the aggressor.
 (c)
The appellant also contends that he and McNeal were business partners and that trial counsel should have questioned McNeal more about this relationship. Whether they were partners had nothing to do with this offense, as a "claim of right" is no defense to a robbery prosecution. § 13A-8-44, Code of Alabama 1975. Furthermore, the appellant's own testimony at trial casts doubts on the existence of any business relationship between the two other than employer-employee.
 (d)
The appellant also contends that trial counsel impeached him by counsel's acknowledgment that appellant was initially a day laborer. This was in no way impeachment. The appellant's claim of a business partnership with McNeal was based on his own misunderstanding.
 (e)
The appellant contends that trial counsel should have subpoenaed the victim's nephew, who was a witness to the robbery, to testify at trial. However, during the hearing on the motion for a new trial, the appellant did not present this witness nor offer any evidence of what the victim's nephew's testimony might have been had he been called. The victim's nephew could have been hostile to the defense and could have hurt the appellant's case rather than helped it.
 (f)
The appellant also contends that other witnesses should have been subpoenaed, e.g., homeowners he and McNeal had done work for in the past. The testimony of homeowners would have added nothing to his defense. As stated earlier, the fact that he and McNeal may have had been business partners was not relevant to the offense of robbery.
 (g)
The appellant claims counsel was ineffective in that he failed to prepare jury charges and failed to request a charge on a lesser included offense. Trial counsel testified at the hearing that he did not request any charges because there was a conference with the trial judge regarding what instructions would be given to the jury and that he was satisfied with those charges. Counsel testified that he made a strategic decision not to request charges on the lesser included offenses of second and third degree robbery because the facts would not support a charge on second degree robbery and because he did not want the jury to have the option of finding the appellant guilty of the lesser offense of third degree robbery. Counsel testified that he did not believe the facts proved robbery and that he wanted the jury to find the appellant guilty of first degree robbery or not guilty. See Saffold v. State,570 So.2d 727 (Ala.Crim.App. 1990). These strategic decisions of counsel were reasonable and were made after thorough investigation.Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2065-66. *Page 191 
 (h)
The appellant also contends that defense counsel was not aware of the range of punishment in this case. No support for this contention appears in the record.
 (i)
The appellant complains that trial counsel failed to review the presentence report with him. However, in his brief the appellant admits that reviewing the report would not have made any difference because the minimum possible sentence is 20 years and that was the sentence that was imposed.
Because the appellant failed to show that his trial counsel's performance was deficient and that the deficient performance prejudiced his defense, he cannot prevail on his claim of ineffective assistance of counsel. We cannot find that additional evidence would have provided a verdict different from that returned by the jury. Whether to grant or to deny a motion for new trial is addressed to the discretion of the trial judge, "and in reviewing such a decision, this court will indulge every presumption in favor of the correctness thereof."Brownlee v. State, 545 So.2d 151, 164 (Ala.Cr.App. 1988), aff'd,545 So.2d 166 (Ala.), cert. denied 493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989). We find no evidence in the record of abuse by the trial judge in the exercise of his discretion.
 II
The appellant contends that black members of the jury venire were improperly struck by the use of peremptory strikes, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1989).
In Ex parte Harrell v. State, 555 So.2d 263 (Ala. 1989), the Alabama Supreme Court restated the requirements necessary to establish a prima facie case of racial discrimination in the selection of a petit jury:
 "Batson requires the presence of three elements to establish a prima facie case of racial discrimination in the selection of a petit jury. The defendant must first prove that he is a member of a cognizable minority and that peremptory challenges were used to remove members of his race from the jury. Second, the defendant is entitled to rely on the fact that a peremptory challenge will allow a prosecutor to make discriminatory choices in jury selection if he chooses to do so. Finally, the defendant must prove from these and any other relevant facts that he may be aware of that an inference of discrimination may be drawn from the prosecutor's conduct. The first two legs of this analysis are easily understood; however, it is the third leg that has apparently caused much of the confusion over whether a prima facie case of discrimination has been proven in a given situation.
 "Scholarly comment has often expressed concern over the lack of clear standards for the Batson analysis. One commentator states:
 " 'Beyond the bare showing of cognizable group affiliation, the defendant's prima facie case consists of whatever evidence he can muster to convince the trial judge that the prosecutor has acted improperly, viewed in light of the inherently manipulable nature of peremptory challenges. Given the Court's nebulous description of the prima facie case, it is not surprising that there are almost as many concepts of sufficient proof of discrimination as there are reviewing courts.
 " 'The most troubling aspect of the prima facie inquiry arises when the only relevant circumstance is the number of minority jurors removed from the jury. In this type of case, the court may be forced to play an often confusing numbers game to decide whether a 'pattern' of discriminatory strikes exists. Decisions based upon numbers alone necessarily assume a somewhat arbitrary character and are a major reason for the often contradictory outcomes in lower court decisions.
 " 'Justice White indicated that a defendant could not establish a prima facie case merely by demonstrating that the prosecutor struck one or more *Page 192 
blacks from the jury. Perhaps relying on this statement, a number of courts have refused to find a prima facie case when the prosecutor removed several blacks from the jury but could have removed an even greater number.'
 "Note, Batson v. Kentucky And The Prosecutorial Peremptory Challenge: Arbitrary and Capricious Equal Protection. 74 Va.L.Rev. 811, 821 (1988)."
Ex parte Harrell, 555 So.2d at 265-66. (emphasis original)
In the instant case, the record reveals that after general qualification of the venire by the court, the State and the defense were allowed to ask special voir dire questions of the jury. Each side had seven strikes. After the jury was struck, but before the remaining veniremembers were dismissed, appellant's counsel made a Batson motion. The following occurred:
 "MR. WALKER: Excuse me. Judge, I have a motion before you dismiss the jury.
 "THE COURT: All right. Just have a seat. Excuse us a minute, folks.
 "(The following proceedings were held in chambers in the presence of the Court, counsel for both sides, the defendant and the court reporter:)
"MR. WALKER: Judge, we have six black veniremen.
"THE COURT: There's seven, isn't it?
"BAILIFF WALKER: Seven.
"THE COURT: There's seven.
 "MR. WALKER: And the State struck three. They struck 216. No. 216 is Z.S., formerly on the jury, lives in Forestdale and works for the Board of Education. No. 73 is C.F., formerly on the jury, and by the way, also works for the Board of Education. They struck No. 58, S.D. She works for the Department of Health and is married, and contributed to the State Troopers Association. We would say that the State has exercised its peremptory challenges in a violatory [sic] manner by striking these people and has no legitimate reason for their strikes.
 "THE COURT: Well, the State used three out of seven strikes. Four blacks remain on the jury. I don't think you've made out a prima facie case. I'm going to deny and overrule your motion. Anything else?"
(R. 8-9.)
Here, there were seven blacks on the venire. The State used three of its seven strikes to remove blacks from the venire, leaving four blacks on the jury. In his attempt to make a prima facie showing of discrimination, appellant's counsel did not bring to the trial court's attention any factor that might show that the prosecutor discriminated against jurors on the basis of race. The trial court found that the appellant had not made a prima facie showing of purposeful racial discrimination and that the State was therefore not required to give reasons for its strikes. We agree that the appellant failed to establish a prima facie case under Batson and Ex parte Branch,526 So.2d 609 (Ala. 1987), because the appellant failed to show any evidence of discrimination other than the number of blacks struck. Hood v. State, 598 So.2d 1022 (Ala.Cr.App. 1991). See also Parker v. State, 571 So.2d 381 (Ala.Cr.App. 1990).
 III
The appellant contends that he was entitled to instructions on the lesser included offenses of third degree robbery and of first degree theft of property. A review of the record reveals that appellant's counsel did not request that these instructions be given. Furthermore, appellant's counsel made no objection to the trial court's oral charge. Because there was no objection to the oral charge, the appellant received no adverse ruling and, therefore, waived any objection to the court's charge. Kyser v. State, 513 So.2d 68 (Ala.Cr.App. 1987). Rule 14, A.R.Crim.P. Temp. Therefore, the issue has not been preserved for our review.
For the foregoing reasons this case is due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 193