The appellant, Donnie Sistrunk, was convicted of the unlawful possession of cocaine, in violation of Ala. Code 1975, §13A-12-212. He was sentenced as a habitual offender to ten years' imprisonment and was ordered to pay court costs and $50 to the Crime Victims' Compensation Fund. The appellant raises four issues in this appeal from his conviction.
 I
The appellant contends that his Sixth Amendment rights were violated because he was denied a jury venire representing a fair cross-section of the community. This claim is based on his assertion that blacks were underrepresented on the venire from which he was required to strike his jury.
At the outset, we note that this issue was first raised in the appellant's motion for a new trial and, consequently, has not been properly preserved for our review. See Lehr v. State,398 So.2d 791, 800 (Ala.Cr.App. 1981). "An issue that was not timely raised at trial will not be considered on appeal. . . . Even constitutional issues must first be correctly raised in the trial court before they will be considered on appeal."Hansen v. State, 598 So.2d 1, 2 (Ala.Cr.App. 1991). Nevertheless, we will address the merits of this issue because a resolution of this issue is necessary to the disposition of the appellant's ineffective assistance of counsel claim discussed in Part III below.
At the hearing on his motion for a new trial, the appellant offered evidence that "as of 1992" blacks constituted 17.82% of the general population of Dale County and 15.46% of the persons of voting age, R. 151; that jurors summonsed for a particular court term are "picked at random by the computer" from Dale County residents "who have drivers' license[s]," R. 153; and that the panel from which his jury was struck consisted of 36 persons, only 2 of whom, or 5.55%, were black, and, when 1 of the 2 black veniremembers was excused for cause,[1] he was left with a panel that was only 2.85% black.
The appellant was tried on Tuesday and Wednesday, November 17 and 18, 1992. The "Clerk's Roll Call," which was introduced at the hearing, indicates that 59 persons appeared *Page 149 
for jury duty on Monday, November 16. Exhibit Record (Ex.R.) 14-15. Of these 59 prospective jurors, 11, or 18.64%, were black. It appears from the roll call that one white prospective juror was excused on November 17, leaving a venire that was 18.96% black.
A jury was struck in another criminal case on Monday, November 16. At the hearing on the motion for a new trial, the attorneys and the trial court made references to the venire's having been "split" alphabetically in order to provide panels for that trial and for the appellant's trial. However, the clerk's jury strike records from the other trial, which were introduced at the request of the State, clearly indicate that the jury in that case was struck from the entire venire of 59 members. Ex.R. 18-20. When seated, that jury consisted of 7 blacks and 5 whites. Ex.R. 17. The prosecutor indicated that the trial of that case was still in progress on Tuesday, November 17, when the jury was struck in the appellant's case.
The Sixth Amendment requires that petit juries "be drawn from a source fairly representative of the community." Taylor v.Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690
(1975). When raising a claim under this requirement, a defendant "has the burden of establishing a prima facie case of a 'fair cross section' violation. Rayburn v. State,495 So.2d 733 (Ala.Crim.App. 1986)." Pierce v. State, 576 So.2d 236, 241
(Ala.Cr.App. 1990), cert. denied, 576 So.2d 258 (Ala. 1991). InDuren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579
(1979), the United States Supreme Court held that a defendant seeking to establish a prima facie case of a violation of the fair cross-section requirement must demonstrate the following three elements:
 "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."
439 U.S. at 364, 99 S.Ct. at 668. While the appellant established that blacks are "a 'distinctive' group in the [Dale County] community," see Lee v. State, [Ms. CR 91-294, March 5, 1993] ___ So.2d ___ (Ala.Cr.App. 1993), it is clear that he has failed to establish the last two of the three Duren elements.
The third Duren element — that there has been a systematic exclusion of a distinctive group — constrains a defendant to establish that "the cause of the underrepresentation was . . . inherent in the particular jury-selection process utilized."Duren, 439 U.S. at 366, 99 S.Ct. at 669. In this case, the appellant established that the original venire was obtained by random selection from the list of licensed drivers in Dale County. Random selection from a list of licensed drivers has been held to be an acceptable manner in which to select a venire. See Stewart v. State, 623 So.2d 413 (Ala.Cr.App. 1993);Joyce v. State, 605 So.2d 1243, 1245 (Ala.Cr.App. 1992). Furthermore, in this particular case, the process used to select the venire clearly did not result in any underrepresentation of blacks — the venire had a slightly greater percentage of blacks that did the general population of Dale County.
It is true that the particular panel from which the appellant's jury was struck contained a substantially smaller percentage of blacks than does the population of Dale County. However, the fair cross-section requirement "ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire." Note, United States v. Gelb:The Second Circuit's Disappointing Treatment of the FairCross-Section Guarantee, 57 Brook. L.Rev. 341, 343 n. 7 (1991). "Rather than being entitled to a cross-sectional venire," a defendant "has a right only to a fair chance, based on a random draw, of having a jury drawn from a representative panel." Comment, The Cross-Section Requirement and Jury Impartiality, 73 Cal.L.Rev. 1555, 1565 (1985). See Johnson v. State,502 So.2d 877, 880 (Ala.Cr.App. 1987) (venire need not be " 'a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group' "). Cf.United States v. Percival, 756 F.2d 600, 615 (7th *Page 150 
Cir. 1985) ("It is the master jury wheel, not the actual grand jury, which must represent a fair cross section of the community. So long as the master jury wheel is adequate and the prescribed procedure is thereafter followed, there can be no complaint that the panel ultimately produced by random selection is somehow underrepresentative in result.") (citations omitted).
In this case, 7 of the 11 blacks in the original venire had been selected to sit on another petit jury when the appellant's jury was struck. The fact that they were not available as part of the appellant's panel is attributable only to the "luck of the draw," rather than to anything "inherent" in the selection process.
We note that there are 2 blacks and 8 whites from the original venire who were unaccounted for at the time the appellant's jury was struck.[2] However, there is absolutely nothing in the record to suggest that any of these potential jurors had been systematically excluded from the appellant's panel. In fact, it does not appear that anyone at the hearing on the motion for a new trial realized that 10 jurors were unaccounted for. As noted above, there were several references to an alphabetical "split" of the original venire in order to create two panels. Even assuming that this alphabetical "split" occurred, the appellant has made no showing that the fact that only 2 of the original 11 blacks were on his panel "was due to anything other than mere coincidence." United States v. Guy,924 F.2d 702, 706 (7th Cir. 1991). See Alschuler, The SupremeCourt and the Jury: Voir Dire, Peremptory Challenges, and theReview of Jury Verdicts, 56 U.Chi.L.Rev. 153, 184-85 (1989) (concept of systematic exclusion does not appear "to encompass 'accidental' exclusion (however frequently it may occur)").
"In the absence of a showing of systematic exclusion, the showing of a disparity between the percentage of blacks in the population of the county in which venue is situated and the percentage of blacks on the venire does not establish a violation of the fair cross-section requirement." Stewart v.State, 623 So.2d 413 (Ala.Cr.App. 1993). Moreover, with regard to the second and third Duren elements, a defendant asserting a fair cross-section violation "must demonstrate . . . not only that [blacks] were not adequately represented on his jury venire, but also that this was the general practice in other venires." Timmel v. Phillips, 799 F.2d 1083, 1086 (5th Cir. 1986). Accord Comment, 73 Cal.L.Rev. at 1565 ("Both federal and state law will infer a systematic flaw only from significant underrepresentation on a number of previous venires. This policy presumably reflects a conviction that an individual instance of underrepresentation might be a coincidence, whereas a pattern will betray a systematic procedural abuse.") (footnotes omitted). Except for evidence of the composition of the venire in the trial of the criminal case that began the day before his trial, where blacks were clearly well represented, the appellant has offered no evidence concerning the racial composition of other venires in Dale County. The appellant has simply failed to prove a prima facie case of a fair cross-section violation.
 II
The appellant asserts that the trial court erred in permitting the prosecutor to introduce inadmissible reputation and collateral offense evidence.
The State's evidence tended to show that the appellant was arrested on August 7, 1992, upon an indictment for another offense returned by a Coffee County grand jury. Five law enforcement officers ultimately participated in the arrest — two officers originally approached the appellant and, when the appellant attempted to flee and a scuffle ensued, three additional officers assisted in subduing the appellant. One officer, Dale County Sheriff's Deputy Butch Jones, testified that during the scuffle with the appellant he "saw a plastic bag come from [the appellant's] waist and pocket area and it fell down and got kicked up under a car." R. 58. This *Page 151 
plastic bag was retrieved by one of the officers and was found to contain the cocaine that is the basis for the instant charge.
Deputy Jones was the only one of the five officers to testify that he saw the appellant "thr[o]w the dope down." R. 58. None of the other four officers saw this action by the appellant. During defense counsel's cross-examination of Deputy Jones, the following occurred:
 "Q. As far as you know you're the only person that saw this?
"A. As far as I know.
 "Q. So, your testimony could be very key in this case then, couldn't it?
"A. I guess so, yes, sir.
 "Q. You say you have known [the appellant] here for 14 years?
 "A. I have known him ever since I have been in law enforcement, yeah.
 "Q. You've wanted him for a long time, too, isn't that true?
"A. I've arrested him before, yes, sir.
"Q. And you've wanted him a long time?
"A. What do you mean by 'wanted?'
"Q. I think you know what I mean.
". . . .
 "Q. Isn't it pretty common practice, police practice, to make some arrests or whatever, and if you can, you put those people to work for you out on the street? You offer to give them a break if they turn somebody in. Isn't that pretty common?
"A. Yes, sir.
". . . .
 "Q. All right. Isn't it a fact that as far back as 1989 you've made that exact same offer to people if they can turn [the appellant] over to you? Isn't that true?
"A. Oh, I wouldn't deny that at all, no."
R. 63-64.
This concluded the cross-examination of Deputy Jones. Immediately thereafter, the prosecutor began his redirect examination:
"Q. Why is that?
"A. He's a known —
"MR. LIVINGSTON [defense counsel]: Objection.
"A. — dealer.
 "MR. EMERY [prosecutor]: Your Honor, he's the one that brought it up.
 "THE COURT: Just a minute. Quit arguing with each other. He's asked the question. Are you objecting?
"MR. LIVINGSTON: Yes, sir, I am.
"THE COURT: I overrule.
"Q. Why is that?
"A. He's a known dealer.
"Q. Do you know that —
"A. In the 14 years I've been here —
 "MR. LIVINGSTON: Your Honor, I would like to have a continuing objection to this line of questioning.
 "THE COURT: You may have a continuing line of objection.
 "Q. And is this information or belief you have come to believe over the last 14 years working in this county as a drug officer?
"A. Yes, sir.
 "Q. So, you didn't start picking on him yesterday to make this case, did you?
"A. No, sir.
"Q. You've arrested him before?
"A. Yes, sir.
"Q. Other drug cases?
"A. Yes, sir." R. 64-65.
Defense counsel then requested a hearing outside the presence of the jury. At this hearing, defense counsel moved for a mistrial, arguing that his cross-examination of Deputy Jones had been for the purpose of showing Jones' bias or prejudice against the appellant and that the testimony elicited by the prosecutor regarding the appellant's reputation and prior bad acts was inadmissible and prejudicial. The trial court responded:
 "I deny your motion for a mistrial. And for the record I recall that it was elicited by you from this witness testing his credibility as to what he actually saw. He said he did not know of anyone else that saw it. I don't know whether anyone else saw it or not. But they may or may not have. But, at that point in time it elicited from you the indication that he was trying to get [the appellant]. You even asked him the question, 'Don't you set up people or ask people to do certain things for you?' and he *Page 152 
said he did. And then, of course, once you brought that out then, of course, the man has the right to explain why. That's my reasoning for the record." R. 67-68.
"[I]t is a general principle that, where a matter has been gone into by one party to a cause, the other party has the right to explain away anything, if he can, that may have been brought out to his detriment." Leonard v. State, 369 So.2d 873,875 (Ala.Cr.App.), cert. denied, 369 So.2d 877 (Ala. 1979). Even evidence of other offenses may be admissible for the purpose of explaining an adverse inference created during cross-examination by the other party. As the Alabama Supreme Court has stated:
 "Th[e general] exclusionary rule [prohibiting evidence of other offenses] notwithstanding, when one party brings out part of a transaction or conversation, the other party may inquire further into the matter or bring out the whole subject for further examination. Logan v. State, 291 Ala. 497, 282 So.2d 898 (1973); Hocutt v. State, 344 So.2d 194 (Ala.Crim.App. 1977). This proposition of law, also known as the 'rule of completeness,' 7 Wigmore, Evidence §§ 2094-2125 (3d ed. 1940), serves the purpose of allowing a party to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary. See generally 22A C.J.S. Criminal Law § 660 (1961) and the cases cited therein."
Ex parte Tucker, 474 So.2d 134, 135 (Ala. 1985).
"The purpose of redirect examination is 'to answer any matters brought out on the cross-examination of the witness by [the] adversary.' C. Gamble, McElroy's Alabama Evidence § 440.01(1) (4th ed. 1991)." Sistrunk v. State, 596 So.2d 644,647 (Ala.Cr.App. 1992).[3] As the trial court noted, defense counsel was asking questions designed to imply that Deputy Jones "was out to get" the appellant. This opened the door for the prosecution to show that Deputy Jones' actions toward the appellant were not attributable to some improper motive. Morganv. State, 589 So.2d 1315, 1321 (Ala.Cr.App. 1991) ("The record clearly shows that Morgan's attorney opened the door to a legitimate inquiry as to the reason surrounding . . . Morgan's suspension from her job. By implying on the cross-examination of Penn Woods (the mayor of the City of Jasper) and Jimmy Vann (an investigator with the Jasper Police Department) that Morgan was being accused of taking funds belonging to the city because Morgan had filed a race discrimination suit against the city, Morgan opened the door for the state to show that the city was not motivated by ulterior reasons and that Morgan had been suspended for matters unrelated to the theft of the money.").
Deputy Jones' testimony that the appellant was a "known dealer" and that he had arrested the appellant on prior occasions was admissible to rebut the adverse inferences created by defense counsel on cross-examination — that Deputy Jones was improperly "out to get" the appellant, or even that Jones "was 'manufacturing' testimony for the benefit of the jury." Sistrunk, 596 So.2d at 647.
The cases cited by the appellant, Lambeth v. State,562 So.2d 575 (Ala. 1990), Nicklaus v. State, 587 So.2d 1053
(Ala.Cr.App. 1991), and Haynes v. State, 574 So.2d 893
(Ala.Cr.App. 1990), are not applicable to this case. Those cases stand for the proposition that hearsay evidence cannot be used to establish predisposition where the defendant has raised the defense of entrapment. They have no application on the issue of the State's rebuttal of adverse inferences created by the defense during cross-examination of a prosecution witness.
 III
The appellant contends that he was denied effective assistance of counsel at trial. The specific acts and omissions complained of are: (1) that trial counsel failed to object to striking a jury from a venire that "was not a fair cross section venire of the citizenry of Dale County"; (2) that trial counsel called only two witnesses on the appellant's behalf "although the [appellant] had made him aware of numerous others"; and (3) that trial *Page 153 
counsel failed to make a Rule 16, A.R.Crim.P, motion for discovery until after the jury had been struck. Appellant's brief at 16-17.
 "In order to prevail on a claim of ineffective assistance of counsel, a defendant must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). 'In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs.' Thomas v. State, 511 So.2d 248, 255
(Ala.Cr.App. 1987)."
Kinsey v. State, 545 So.2d 200, 202 (Ala.Cr.App. 1989) (emphasis in original). Accord Project, Twenty-Second Annual Review ofCriminal Procedure: United States Supreme Court and Courts ofAppeals 1991-1992, 81 Geo.L.J. 853, 1281-82 (1993). In this case, the appellant has clearly failed to establish that he was prejudiced in any manner by the complained of acts and omissions of trial counsel. We therefore need not address the question of whether any of those acts or omissions constituted deficient performance on the part of trial counsel.
As discussed in Part I of this opinion, the appellant failed to show that a fair cross-section violation occurred. Consequently, it is abundantly clear that the failure of trial counsel to object to the composition of the venire did not prejudice the appellant.
Trial counsel acknowledged at the hearing on the appellant's motion for a new trial that he called only two[4] of the five or six witnesses that the appellant had made him aware of and that had been subpoenaed. Trial counsel was not asked and did not explain why only two of the five or six witnesses were called to testify. The appellant did not identify the other witnesses and made no showing as to what their testimony might have been. Under these circumstances, the appellant has failed to show how counsel's failure to call the additional witnesses prejudiced him. McCall v. State, 565 So.2d 1163, 1167 (Ala.Cr.App. 1990). See also Dees v. United States, 789 F.2d 1521, 1522 (11th Cir. 1986).
At the hearing on the motion for a new trial, trial counsel acknowledged that he made no pre-trial motion for discovery. However, he also stated:
 "We had a preliminary hearing sometime in early September. At the hearing certain officers testified and I believe I spoke to other officers after the hearing. I had had an opportunity to review certain chain of custody documents. Just prior to trial, I made an oral discovery motion and once again reviewed the chain of custody documents and I believe there were several photographs. I don't recall if any of the photos were introduced into evidence. We knew what was coming. We weren't surprised by anything, but there was no written discovery motion."
R. 167 (emphasis added). On cross-examination by the prosecutor, trial counsel agreed that "[a]ll the evidence that was presented by the State, [he] knew the State had," and that "[b]asically [the State's case] came down to the policeman who [said he] saw the defendant throw the dope down on the ground." R. 173.
"The purpose of . . . discovery [in modern criminal practice] is to 'permit thorough preparation for trial and [to] minimize surprise at trial.' " Thomas v. Wyrick, 687 F.2d 235, 239 (8th Cir. 1982), cert. denied, 459 U.S. 1175, 103 S.Ct. 824,74 L.Ed.2d 1020 (1983). Cf. Cone Builders, Inc. v. Kulesus,585 So.2d 1284, 1289 (Ala. 1991) ("[u]ndeniably, the purpose of the discovery process is to avoid unfair surprise at the trial"). Trial counsel clearly indicated that the State's case against the appellant was uncomplicated and that he was aware, prior to trial, of all the evidence that the State would introduce. The appellant *Page 154 
has offered nothing to refute trial counsel's assertions or to indicate that trial counsel was unprepared for or surprised by any particular evidence introduced by the State. He has made no assertion that the State possessed any evidence that was not introduced at trial or that the State possessed exculpatory evidence that should have been disclosed prior to trial. Again, the appellant has failed to establish that he was prejudiced in any manner by trial counsel's actions. See Ashley v. State,606 So.2d 187, 190 (Ala.Cr.App. 1992) (counsel not ineffective for failing to file a discovery motion "in order to find out whether a knife existed" when there was no showing that the knife was in the State's possession).
The prejudice prong of the Strickland test "requires a showing that a different outcome of the trial probably would have resulted but for counsel's allegedly ineffective performance." Ex parte Lawley, 512 So.2d 1370, 1372 (Ala. 1987). The appellant has clearly failed to make that showing.
 IV
In his motion for a new trial and the two amendments thereto, C.R. 42, 49, 50, the appellant made several nonspecific "boiler-plate" allegations, such as that he was denied due process and equal protection, in addition to raising the issues discussed in Part I (fair cross-section violation) and Part III (ineffective assistance of counsel) of this opinion. At the hearing on his motion for a new trial, the appellant offered evidence with regard to his fair cross-section violation claim and his ineffective assistance of counsel claim. Appellate counsel orally argued that the appellant was due a new trial on these grounds as well as on the ground discussed in Part II above (admission of reputation and collateral offense evidence).
It is well settled that "[a] decision on a motion for a new trial rests largely within the discretion of the trial court, and [that] in reviewing such a decision this court will indulge every presumption in favor of the correctness thereof."Brownlee v. State, 545 So.2d 151, 164 (Ala.Cr.App. 1988), affirmed, 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874,110 S.Ct. 208, 107 L.Ed.2d 161 (1989). Accord, e.g., Ashley v.State, 606 So.2d 187, 191 (Ala.Cr.App. 1992); Leverett v. State,462 So.2d 972, 981 (Ala.Cr.App. 1984). "A trial judge's denial of a motion for new trial will not be disturbed [on appeal] in the absence of a showing of [an] abuse of discretion." Moye v.State, 527 So.2d 158, 160 (Ala.Cr.App. 1987). In view of our disposition of the issues raised in Parts I, II, and III, it is clear that there was no abuse of discretion in the trial court's denial of the appellant's motion for a new trial.
For the reasons stated above, the judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] A black female was excused after she informed the prosecutor, who informed the trial judge, that "she had rather not serve as a juror on this particular case" because "she knows the defendant is a drug dealer and it wouldn't be fair to the defendant." R. 20.
[2] Out of the original 59, 12 were seated on the jury in the other criminal case and one had been excused, leaving 46 available, of whom 4 would have been black. There were only 36 people in the venire from which the appellant's jury was struck, 2 of whom were black.
[3] The defendant in Sistrunk was A.D. Sistrunk. It appears that A.D. Sistrunk and Donnie Sistrunk, the appellant in the present case, are different individuals.
[4] The two witnesses who testified stated that there were a number of cars parked in the residential area where the officers approached the appellant. One of the witnesses testified that he left the area as the officers were approaching the appellant and that he did not see the ensuing scuffle. The other witness stated that he did observe the scuffle and that he did not see the appellant throw anything to the ground.