** Note from the reporter of decisions: The defendant's certiorari petition carried the name Rovair Finch.
The appellant, Roviar Finch, was convicted by a jury of both murder and attempted murder, violations of §§ 13A-6-2 and13A-4-2, Code of Alabama 1975, respectively. The trial court sentenced the appellant to life imprisonment on each conviction; the terms were to run consecutively. The appellant raises five issues on appeal.
 I.
The appellant argues that the trial court violated his due process rights when it denied his motion for expert assistance without first conducting a formal ex parte hearing. In support of his argument, the appellant relies solely upon the Alabama Supreme Court's decision in Ex parte Moody, 684 So.2d 114 (Ala. 1996), in which that court held that an indigent defendant has a constitutional right to an ex parte hearing on whether expert assistance is necessary. This issue provides this court with the first opportunity to determine what constitutes an "exparte hearing" in light of the procedural due process requirements announced in Moody.
At arraignment, the trial court determined that the appellant was indigent and appointed counsel to represent him. Before trial, the appellant filed what he styled as an "Ex Parte Motion for Expert Assistance Under Seal," requesting that the trial court allocate to him the funds necessary to employ a criminal investigation expert.[1] The appellant stated in the motion that "[t]his motion has not been filed upon the [State] as it is being filed ex parte." The motion did not contain a request that the trial court hold a formal ex parte hearing on the matter, and the appellant did not request a hearing in any other conversation with the court. Without conducting a formal hearing, the trial court denied the appellant's motion.
In Ex parte Moody, the Alabama Supreme Court stated the following:
 "Requiring an indigent defendant to prematurely disclose evidence in a hearing where the state is present encroaches on the privilege against self-incrimination, which applies at all stages of a criminal proceeding. The privilege against self-incrimination 'does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution.' Maness v. Meyers, 419 U.S. 449, 461, 95 S.Ct. 584, 592, 42 L.Ed.2d 574 (1975).
 "There should be equality between 'indigents and those who possess the means to protect their rights.' United States v. Tate, 419 F.2d 131 (6th Cir. 1969). An indigent defendant should not have to disclose to the state information that a financially secure defendant would not have to disclose. In United States v. Meriwether, 486 F.2d 498, 506 (5th Cir. 1973), the court stated:
 " 'The names of witnesses to be called by the defendant could easily aid the government in determining the strategy the defendant plans to use at trial. The government should not be able to obtain a list of adverse witnesses in the case of a defendant unable to pay their fees when it is not able to do so in the cases of defendants able to pay witness fees. When an indigent defendant's case is subjected to pre-trial scrutiny by the prosecutor, while the monied defendant is able to proceed without such scrutiny, serious equal protection questions are raised.'
 "The Sixth Amendment right to assistance of counsel encompasses the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). This right includes access to expert witnesses where it is appropriate. United States v. Wright, 489 F.2d 1181, *Page 909 
1188 n. 6 (D.C. Cir. 1973). Disclosure of the defense's trial strategy would impair the indigent defendant's right to effective assistance of counsel."
684 So.2d at 120 (emphasis original).
In his brief, the appellant presumes that Moody extends an automatic and unqualified right to a formal ex parte
evidentiary hearing any time an indigent defendant requests the assistance of experts. Based on the Alabama Supreme Court's reasoning in Moody, we find that this presumption is incorrect and the appellant's argument is without merit.
The reasons behind affording an ex parte hearing to an indigent defendant requesting expert assistance are threefold: (1) protection of the privilege against self-incrimination; (2) prevention of premature disclosure of evidence, potential witnesses, and overall defense strategy; and (3) preservation of the right to effective assistance of counsel. These goals are met when an indigent defendant is afforded an opportunity to communicate his request to the trial court in the State's absence. As long as the State remains absent from the communication of this request, the ex parte hearing required byMoody may take place in various forms and is not limited to a formal hearing conducted before the trial court. Requiring a formal hearing in all instances is contrary to the flexible approach used in determining what procedural requirements are necessary to guarantee due process. See Morrissey v. Brewer,408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands"); Cafeteriaand Restaurant Workers Union, Local 473 v. McElroy,367 U.S. 886, 895, 81 S.Ct. 1743, 1748-49, 6 L.Ed.2d 1230 (1961) ("[d]ue process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances"). Following its decision in Moody, the Alabama Supreme Court has approved this court's interpretation of what process is due to an indigent defendant requesting expert assistance.
In Bush v. State, 695 So.2d 70, 104 (Ala.Cr.App. 1995), aff'd, 695 So.2d 138 (Ala. 1997), we held that the trial court did not err in refusing an indigent defendant's request for a formal ex parte hearing on his motion for expert assistance.
 "We do not agree with the appellant that the trial court refused to permit an ex parte hearing. The record shows that the trial court permitted the appellant to file with the court a supplementary motion under seal and afforded him the opportunity to file any additional information he desired in writing ex parte in support of his motion. The record shows, in pertinent part, the following:
 " 'MR. BALSKE [defense counsel]: Has the Court denied the defendant's right to make an ex parte
showing, to make this showing?
 " 'THE COURT: No. I said that I will read this [supplementary motion]; and I'll read anything else you want me to look at.
 " 'MR. BALSKE: I think what the defendant is requesting is to put on testimony to the Court.
 " 'THE COURT: I had heard what you said; and I said I would look at anything you give me. If it's ex parte I might as well read it rather than listen to you saying it. I've read it [supplementary motion] rather than listen to you saying it. Do you understand what I'm saying.
" 'MR. BALSKE: I understand, Judge.
 " 'THE COURT: I've read your [supplementary motion]; and if you want to give me something else I'll read it. If you are going to have ex parte there won't be anybody to cross-examine. If you haven't got any more to say than what you have on Number 3 [supplementary motion re: a ballistics expert], I overrule you; and I will look at whatever else you have got and reconsider if and when you file something.' "
695 So.2d at 104-05. The defendant did not object to the procedure used to review his motion requesting expert assistance. 695 So.2d at 105. *Page 910 
In Bush, we did not address the issue whether an indigent defendant was entitled to a hearing on the merits of his claim for expert assistance. However, we did find that the procedure used by the trial court in Bush satisfied the indigent defendant's request for an ex parte hearing. Id. Subsequent to its decision in Moody, the Alabama Supreme Court affirmed our decision in Bush, recognizing that due process does not always require that a trial court conduct a formal ex parte hearing on an indigent defendant's request for funds for expert assistance. Ex parte Bush, 695 So.2d 138 (Ala. 1997).
Based on the legal principles expressed in Bush and approved by the Alabama Supreme Court, we find that the trial court did not violate the appellant's due process rights when it denied his motion requesting funds for expert assistance without first conducting a formal ex parte hearing. Just as in Bush, the trial court in this case reviewed the merits of the appellant's claim as submitted in his ex parte motion. The record indicates that at no time was the State privy to any information regarding the appellant's request that would violate his constitutional rights. In addition, the appellant never objected to the procedure by which the trial court reviewed the merits of his request. See Bush, 695 So.2d at 105. Furthermore, unlike the indigent defendant in Bush, the appellant did not request a formal evidentiary hearing on the motion.
Therefore, the trial court's denial of the appellant's motion for funds for expert assistance, without conducting a formal hearing, did not deprive the appellant of his right to due process of law.
 II.
The appellant also argues the trial court denied him his right to a fair trial by denying his pretrial "Motion For Funds For Expert Assistance To Investigate Grand and Petit Jury Venires." The motion requested funds to employ an investigator, a statistician, a sociologist, and a jury selection expert to challenge the constitutionality of the current method of selection of the grand jury and petit jury venires in Jefferson County. The appellant's argument is without merit.
In Moody, the Alabama Supreme Court defined the standard by which a trial court must assess an indigent defendant's request for expert assistance.
 "Although the [United States] Supreme Court has not specifically stated what 'threshold showing' must be made by the indigent defendant with regard to the need for an expert, the Court refused to require the state to pay for certain experts when the indigent defendant 'offered little more than undeveloped assertions that the requested assistance would be beneficial.' Caldwell v. Mississippi, 472, U.S. 320 at 323, 105[,] S.Ct. 2633 at 2637, 86 L.Ed.2d 231 (1985). As we stated in Dubose [v. State, 662 So.2d 1189 (Ala. 1995)] the Supreme Court cases of Ake[v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985)] and Caldwell, viewed together, seem to hold that an indigent defendant must show more than a mere possibility that an expert would aid in his defense. 'Rather, the defendant must show a reasonable probability that an expert would aid in his defense and [must show that] a denial of an expert to assist at trial would result in a fundamentally unfair trial.' Dubose, 662 So.2d at 1192, citing Moore v. Kemp, 809 F.2d 702 (11th Cir.), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987).
". . . .
 "Based on the foregoing, we conclude that for an indigent defendant to be entitled to expert assistance at public expense, he must show a reasonable probability that the expert would be of assistance in the defense and that the denial of expert assistance would result in a fundamentally unfair trial. To meet this standard, the indigent defendant must show, with reasonable specificity, that the expert is absolutely necessary to answer a substantial issue or question raised by the state or to support a critical element of the defense. If the indigent defendant meets this standard, then the trial court can authorize the hiring of an expert at public expense."
684 So.2d at 119. See also Burgess v. State, [Ms. CR-93-1147, August 22, 1997] *Page 911 
___ So.2d ___ (Ala.Cr.App. 1997); MacEwan v. State, 701 So.2d 66
(Ala.Cr.App. 1997); Ex parte Dobyne, 672 So.2d 1354, 1357 (Ala. 1995), cert. denied, 517 U.S. 1169, 116 S.Ct. 1571,134 L.Ed.2d 670 (1996).
Applying this standard to the appellant's request for expert assistance, we cannot say that, by refusing his request, the trial court denied the appellant his right to a fair trial. In his brief, the appellant states:
 "Presently, the State of Alabama is utilizing a single process for selecting jurors and that is a random selection from those persons holding a valid driver's license. The random selection of list of driver's license [sic] is an acceptable manner in which to select a jury venire as held in Sistrunk v. State, 630 So.2d 147 (Ala.Cr.App. 1993). The Sistrunk case failed to examine part of the process utilized by the Department of Public Safety in issuing and/or suspending licenses. It is expected that . . . [had] the trial court . . . [granted] the funds necessary to retain the experts requested in the Appellant's motion the Appellant would have been in a position to have shown the trial court that certain significant groups are being under-represented in the petit and grand jury process."
(Appellant's Brief at 23) (emphasis added). The appellant has failed to show with reasonable specificity that the experts he requested would have provided information related to any question or issue raised by the State at trial or would have been relevant to any element of the crimes for which he was charged. Rather, the appellant's argument is based merely on an "expectation" that the requested assistance would have been beneficial to his defense. Caldwell, supra. In a similar case, this court recently upheld an order denying funds for a statistical expert requested by an indigent defendant to assist in challenging the jury venire in Tuscaloosa County. See May v.State, 710 So.2d 1362, 1366 (Ala.Cr.App. 1997). In May, we stated that the defendant failed to "make a threshold showing . . . that the statistical expert would be of assistance" because his "request was supported solely by his assertion that the venire was not a fair cross-section of the community." Id.
Furthermore, we have already held that the random selection of jurors from a list of licensed drivers is an acceptable manner by which to select a jury venire. Sistrunk v. State,630 So.2d 147 (Ala.Cr.App. 1993).
Therefore, the trial court did not deprive the appellant of his right to a fair trial by denying his request for expert assistance to investigate the juror selection process in Jefferson County.
 III.
The appellant further argues that the trial court improperly admitted evidence of an offense other than the offense charged in the indictment. The evidence in question is the testimony of Anthony Brown elicited during the State's case-in-chief. Mr. Brown testified as to how he discovered the Beretta 9mm pistol used to kill one of the victims in this case. Mr. Brown stated that he witnessed a shootout in front of Tee's Place, a nightclub in downtown Birmingham, and that he saw an individual he did not know toss the pistol behind a dumpster, where Mr. Brown recovered it. The appellant failed to preserve this issue for review.
A specific objection must be made to inform the trial court of the basis for the objection and to allow the court an opportunity to make an informed decision on the legal issues involved and to correct any possible error. Callahan v. State,644 So.2d 1329, 1331 (Ala.Cr.App. 1994), citing Bland v. State,395 So.2d 164, 168 (Ala.Cr.App. 1981). We " 'cannot consider matters on appeal that have not first been presented to [the] trial court for its determination.' " Clay v. State,687 So.2d 1245, 1250 (Ala.Cr.App. 1996) (quoting Scott v. State,627 So.2d 1131, 1132 (Ala.Cr.App. 1993)). " 'This Court will not consider an argument raised for the first time on appeal; its review is limited to evidence and arguments considered by the trial court.' " Eastland v. State, 677 So.2d 1275, 1276
(Ala.Cr.App. 1996), quoting Abbott v. Hurst, 643 So.2d 589
(Ala. 1994). *Page 912 
The record does not show that the appellant objected at trial to the challenged testimony. Rather, he presents this argument for the first time on appeal. Therefore, this issue was not preserved for our review.
 IV.
The appellant argues that the trial court erroneously refused to charge the jury on the lesser included offense of manslaughter and on the effect of intoxication as he requested. Specifically, he argues that both charges were justified because there was sufficient evidence of his voluntary intoxication. The appellant failed to preserve this issue as well.
 "As this Court stated in Jones v. State, 591 So.2d 569, 573 (Ala.Cr.App. 1991):
 " 'Under [Rule 21.1, Ala.R.Crim.P.], to preserve alleged error in the refusal of requested charges, a defendant must not only object in a timely manner, he must "state with particularity the grounds of [his] objection." Matkins v. State, 497 So.2d 201, 203 (Ala. 1986) (emphasis omitted).' "
Morrison v. State, 601 So.2d 165, 178 (Ala.Cr.App. 1992). An objection must be specific enough to put the trial court on notice of any alleged error and provide the court with an opportunity to correct any error if necessary. Petite v. State,520 So.2d 207, 213 (Ala.Cr.App. 1987).
The record indicates that the appellant did not raise in the trial court the specific argument he now asserts on appeal. At no time did the appellant argue before the trial court that the requested charges on manslaughter and intoxication were supported by sufficient evidence of the appellant's voluntary intoxication on the day of the murders. Therefore, because the trial court was never afforded an opportunity to correct the alleged error, the appellant's argument is not preserved for our review. Clay, supra.
 V.
Finally, the appellant argues that the trial court abused its discretion in admitting into evidence the prior testimony of an unavailable witness. Specifically, he alleges that by admitting this evidence, the trial court denied him his constitutional right to confront witnesses against him as guaranteed by the Sixth Amendment to the United States Constitution. We disagree.
Before trial, the State made a motion to read into evidence the prior testimony of George Cook, the victim in the attempted murder charge and an eyewitness to the murder that formed the basis of the capital murder charge. Mr. Cook had previously testified under oath at a preliminary hearing and was cross-examined by defense counsel. However, Mr. Cook failed to appear to testify at trial after he was arrested on charges unrelated to this case and released on bail. The trial court determined that reasonable efforts had been undertaken to locate Mr. Cook and that he was unavailable for purposes of trial. During the trial, the court allowed the State to read into evidence a transcript of Mr. Cook's testimony at the preliminary hearing.
In Inmon v. State, 585 So.2d 261 (Ala.Cr.App. 1991), we adopted the "general approach" established by the United States Supreme Court for determining whether hearsay statements admissible under an exception to the hearsay rule satisfy the constitutional mandates of the Confrontation Clause:
 " '[T]he Confrontation Clause "operates in two separate ways to restrict the range of admissible hearsay." "First, . . . the Sixth Amendment establishes a rule of necessity. In the usual case . . ., the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant." . . . Second, once a witness is shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." '
 "Idaho v. Wright, 497 U.S. 805, 814-15, 110 S.Ct. 3139, 3146, 111 L.Ed.2d 638 (1990) (quoting Ohio v. Roberts, 448 U.S. 56, 65-66, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 *Page 913 
(1980)). See also Fortner v. State, 582 So.2d 581
(Ala.Cr.App. 1990)."
585 So.2d at 265.
 "When a state's witness is unavailable and prior recorded testimony of the witness is admitted, the requirements of the Confrontation Clause are met if that prior testimony is marked with such truthworthiness that there is no material departure from the reason of the general rule, and if it bears indicia of reliability that would afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement. Ohio v. Roberts, [448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)]; Mancusi v. Stubbs, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); Rouse v. State [, 548 So.2d 643 (Ala.Cr.App. 1989)]."
695 So.2d at 127.
Applying this analysis to the facts of this case, we conclude that the appellant was not denied his constitutional right to confront and to cross-examine Mr. Cook. First, the trial court determined that Mr. Cook was unavailable for trial. See Napierv. State, 377 So.2d 1135, 1138 (Ala.Cr.App.), cert. denied,377 So.2d 1138 (Ala. 1979) ("[t]he sufficiency of the proof of the predicate of unavailability of an absent witness is addressed to the sound discretion of the trial judge"). Second, Mr. Cook's testimony qualified under the "firmly rooted" prior testimony exception to the hearsay evidence rule. See Rule 804(b)(1), Ala.R.Evid. Therefore, Mr. Cook's prior testimony possessed the requisite trustworthiness and indicia of reliability necessary to satisfy the constitutional requirements of the Sixth Amendment. Inmon, supra; see alsoBush, 695 So.2d at 126-27.
Therefore, the appellant's Sixth Amendment right to confront the witnesses against him was not violated when the trial court admitted into evidence the prior testimony of Mr. Cook.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
All judges concur.
[1] The appellant filed multiple pretrial motions requesting funds to employ experts in various fields. However, he raises this constitutional claim only in regard to his motion requesting the assistance of an expert criminal investigator. Our holding applies to this particular motion and does not apply to the appellant's motion requesting expert assistance discussed in Part II of this opinion.