The appellant, a 17 year old, was arrested on January 24, 1985, and charged with being a juvenile delinquent, to-wit: "That on or about January 22, 1985, Samuel Eugene Taylor did intentionally cause the death of another person, Kammye Lytorcha Huey, by strangulation and/or beating her with a blunt instrument, in violation of Section 13A-6-2 of the Code of Alabama, against the peace and dignity of the State of Alabama." On February 1, 1985, the Dallas County District Attorney's Office filed a petition to have the appellant certified to be tried as an adult in the circuit court. On April 16, 1985, a hearing was conducted pursuant to that petition, after which the juvenile court entered an order of transfer directing that he be tried as an *Page 1043 
adult. This appeal is from that transfer order.
 I
Initially, the appellant claims that a new transfer hearing is mandated because the April 16th hearing was not conducted in compliance with Rule 24, Alabama Rules of Juvenile Procedure. That rule provides:
 "The court shall open the hearing by ascertaining if all necessary parties are present and ready to proceed, and should so note on the record.
 "The court shall then explain to the parties their rights during the proceedings, the substance of the petition and the specific allegations contained in said petition. The court shall also explain to the parties the nature of the proceedings and the alternatives available to the court should the allegations contained in the petition be admitted or proven.
 "Following these procedures, the court may inquire of the child whether he admits or denies all or some of the allegations contained in the petition. Failure or refusal of the child to admit any allegation shall be deemed a denial of such allegation. If the admissions do not obviate the necessity for a hearing, the court shall then proceed to hear evidence, unless additional time is necessary to prepare for the hearing, and all testimony shall be under oath.
 "The eliciting of testimony shall not be by any probation officer."
The transcript of the April 16th hearing is devoid of any indication that the juvenile court followed the requisites of Rule 24, A.R.J.P. We have previously stated that such a failure requires us to reverse. "We think the objection sufficiently preserved the error for review. For failure to comply with Rule 24, this cause will have to be remanded for a new hearing."Newton v. State, 474 So.2d 775 (Ala.Cr.App. 1985). However, the transcript of that April 16th hearing also shows that the appellant did not object to the juvenile court's oversight and place the issue before the court so the rule could have been complied with. The State, in its brief, asserts that the issue is therefore not properly preserved, correctly stating that "even constitutional issues must first be raised at the trial level or they are deemed waived." This basic rule likewise applies to juvenile proceedings. See, e.g., Talley v. State,483 So.2d 1369 (Ala.Cr.App.), cert. quashed, 483 So.2d 1372
(Ala. 1985). However, in Webb v. State, 453 So.2d 11
(Ala.Cr.App. 1984), we affirmed without an opinion a juvenile transfer order in which the appellant did not object to the failure of the juvenile court to comply with Rule 24, A.R.J.P. Our decision was reversed by the Alabama Supreme Court in Exparte Anonymous, 466 So.2d 81 (Ala. 1984), and a new transfer hearing was ordered. Webb v. State, 466 So.2d 83 (Ala.Cr.App. 1985). Upon the authority of this precedent, we must reverse the ruling growing out of the earlier transfer hearing and remand this case for a new transfer hearing, one in which the juvenile court follows Rule 24, A.R.J.P.
The appellant raises three other issues that are not rendered moot by this decision. In the interest of judicial economy, we will address them now.
 II
When the appellant was arrested, his parents followed the police down to the police station. In the presence of the parents, a detective read appellant his Miranda rights. The appellant signed his initials next to each of his rights on a waiver of rights form, and indicated that he understood each of his rights. When the father asked one of the detectives whether he thought the appellant needed a lawyer, the appellant stated, "Don't worry about it. I don't need a lawyer."
The appellant asserts that the requirements of Rule 11 (A), A.R.J.P., were not met. That rule provides:
 "(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) That he has the right to counsel; *Page 1044 
 "(2) That if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
 "(3) That he is not required to say anything and that anything he says may be used against him; and
 "(4) If his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so."
The last sentence is the subsection he claims was not met.
"Rule 11 (A)(1), (2), and (3), taken together, are substantially the same as the warnings required in Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). By virtue of Rule 11 (A)(4), Alabama has included an additional warning for the protection of juveniles." Ex parte Whisenant,466 So.2d 1006, 1007 (Ala. 1985). Because the detective did not also advise them of the appellant's right under Rule 11 (A)(4), A.R.J.P., it would initially appear that the appellant's ensuing statements must be suppressed. However, because the appellant's parents were already present with him, subsection (4) does not apply. Subsection (4) is a conditional advisement; only "if his counsel, parent, or guardian is not present" must he be advised that he has a right to communicate with them. Because the parents were present and communicating with the appellant, Rule 11 (A)(4), A.R.J.P., did not apply to the appellant.
 III
The appellant claims the juvenile court exceeded its authority by ordering him to submit to a blood test. The victim was five months pregnant at the time of death, and the blood test indicated that there was a 98% probability that the appellant was the father of the unborn child.
"The blood test procedure has become routine in our everyday life," Breithaupt v. Abram, 352 U.S. 432, 437, 77 S.Ct. 408,411, 1 L.Ed.2d 448 (1957), "and . . . for most people the procedure involves virtually no risk, trauma, or pain."Schmerber v. California, 384 U.S. 757, 771, 86 S.Ct. 1826,1836, 16 L.Ed.2d 908 (1966). Nevertheless, the individual's interest in personal privacy and bodily integrity will prevail if the procedure endangers the life or health of the defendant. See Winston v. Lee, 470 U.S. 753, 105 S.Ct. 1611,84 L.Ed.2d 662 (1985). "Weighed against these individual interests is the community's interest in fairly and accurately determining guilt or innocence. This interest is of course of great importance."Id., 470 U.S. at ___, 105 S.Ct. at 1618. Additionally, the blood test has become "a commonplace in these days of periodic physical examinations," Schmerber v. California, supra,384 U.S. at 771, 86 S.Ct. at 1836, and they "do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." Winston v. Lee, supra, 470 U.S. at ___,105 S.Ct. at 1617.
We note that, by statute, Alabama specifically authorizes the use of blood tests in paternity cases. See § 26-17-12, Code of Alabama 1975. Based on the foregoing, we hold that the juvenile court properly exercised its discretion in ordering the appellant to submit to a blood test.
 IV
After questioning the appellant, the police asked the parents for consent to search their residence for the clothes the appellant wore the day Kammye Huey was reported missing. The appellant's mother signed a consent to search form, and both parents, along with the appellant, accompanied the officers to their residence to find the sought-after clothes. At the residence, the appellant entered his bedroom and handed to the officers the clothes he claimed he wore on the specified day. The appellant claims that his action was "a submission to police authority, and the same is not sufficient to show aknowing, intelligent and voluntary waiver of Fourth Amendment and Fourteenth Amendment constitutional rights." (Emphasis original.) We disagree. Even if his claim were correct, it would fail to negate *Page 1045 
the fact that his mother had given her constitutionally valid consent to search the residence, which included the search of the appellant's bedroom.
"[T]he parent's rights are `superior to the rights of children who live in the house,' which means . . . that the parent's consent would be effective even when the child was present and objecting." W. LaFave, 2 Search and Seizure § 8.4 (1978). "Even if a minor child, living in the bosom of his family, may think of a room as `his', the overall dominance will be in his parents." United States v. Di Prima,472 F.2d 550, 551 (1st Cir. 1973).
 "If a son or daughter, whether or not still a minor, is residing in the home of the parents, generally it is within the authority of the father or mother to consent to a police search of that home which will be effective against the offspring. This is unquestionably so as to areas of common usage, and is also true of the bedroom of the son or daughter when a parent has ready access for purposes of cleaning it or when because of the minority of the offspring the parent is still exercising parental authority. Because in the latter circumstances the parent's rights are `superior to the rights of children who live in the house,' a parent's consent would prevail even if the child were present and objecting and even if the child had taken special measures in an effort to ensure he had exclusive use of the area searched." W. LaFave, 1 Criminal Procedure § 3.10 (E) (1984).
Therefore, even if the appellant had been standing there objecting to the search — as contrasted with his actively searching for, finding, and handing to the police the objects of the search — the consent given by his parents prevails, and thus the search was proper.
Based on Part I of this opinion, we reverse and remand this case to the juvenile court with instructions to conduct a new transfer hearing that complies with Rule 24, A.R.J.P.
REVERSED AND REMANDED WITH INSTRUCTIONS.
All the Judges concur.