The appellants, Tyrone Cleveland and Eugene White, appeal from an order transferring them from the Juvenile Court to the Circuit Court for Montgomery County. The instances in this case involve two separate homicides.
The evidence tended to show that on December 22, 1988, Jimmy Dixon was attacked and later died of injuries he sustained. Dixon's home had been broken into and his car was stolen. Appellant Cleveland's fingerprints were found on the passenger window of the car.
On January 7, 1989, Maynard Kolauokalani was stabbed to death with a butcher knife. A television, a watch, and a 1984 Chevrolet Chevette automobile were missing from his residence. Three days after the murder, appellants White and Cleveland were found entering the Chevette that had belonged to Kolauokalani. They were read their rights from standardMiranda forms, and they gave statements to the police. It was later determined that the appellants were juveniles. A police officer assigned to juvenile cases was then brought in. He read them their juvenile rights, following the outline of Rule 11(A), Alabama Rules of Juvenile Procedure.
White gave another statement, relating to the Dixon homicide, to the police after he was read his juvenile rights. He stated that he and Cleveland were at the downtown post office when they saw Dixon drive up; that Dixon invited them into his car; that Cleveland got in but White did not; and that the next morning Cleveland knocked on White's door and said that he had choked Dixon and taken his car. White said that he and Cleveland entered Dixon's house with his key and committed the theft.
When they were arrested, White was wearing the watch taken from Kolauokalani's residence. The television taken from Kolauokalani's residence was also found after information was received from the appellants. A witness identified the appellants as the men who sold her the television set. *Page 303 
Acting on a valid search warrant, police discovered in White's house an owner's manual to a 1984 Chevette. The tag registered to the victim's car was found at Cleveland's house.
In reference to the Kolauokalani homicide, in which the facts are very similar to those of the Dixon homicide, White stated that they both got into the victim's car at the post office. He also stated that Cleveland had taken a butcher knife with him, since he intended to steal a car. White later changed his story and said that he was not in the car. White then stated that Cleveland returned 45 minutes later with the car and then told White that he had killed the victim. Appellant White stated that Cleveland gave him the victim's watch and took him to get the television set. Knives like the one found in the victim's body were located in Cleveland's house.
 I
Appellants do not argue that their statements were "involuntary"; rather, they contend that the state did not meet its burden of proving admissibility under Miranda. As the United States Supreme Court stated:
 "The inquiry [into the validity of a waiver] has two distinct dimensions. First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived."
Moran v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 1141,89 L.Ed.2d 410 (1986).
Appellants appear to concede the first inquiry of voluntariness. Thus, we are left with determining whether the waiver was made "with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, supra.
According to Rule 11(A), Alabama Rules of Juvenile Procedure:
 "(A) When the child is taken into custody, he must be informed of the following rights by the person taking him into custody:
"(1) That he has the right to counsel;
 "(2) The if he is unable to pay a lawyer and if his parents or guardian have not provided a lawyer, one can be provided at no charge;
 "(3) That he is not required to say anything and that anything he says may be used against him; and
 "(4) If his counsel, parent, or guardian is not present, that he has a right to communicate with them, and that, if necessary, reasonable means will be provided for him to do so."
See also Taylor v. State, 491 So.2d 1042 (Ala.Cr.App. 1986). The record reflects that the following rights were read to the appellants:
 "Before talking with you I must advise you that you have the following rights:
1. You have the right to talk with a lawyer.
 2. If you are unable to pay a lawyer and if your parents or guardian have not provided a lawyer, one can be provided at no charge.
 3. You are not required to say anything and, anything you say may be used against you.
 4. You have the right to communicate with a lawyer, parents, and guardians. Reasonable means will be provided to do so.
5. If you are placed in detention:
 a. You will be fully informed of the reasons for your detention.
 b. You will have a detention hearing within 72 hours.
 c. Your parents will be notified of your detention."
The rights read to the juvenile appellants clearly comply with those required by Rule 11(A), Rules of Juvenile Procedure. *Page 304 
In the instant case, officers testified that the appellants were read their Miranda rights first, and that while being transported to police headquarters they made an incriminating statement. This statement was tape-recorded. However, upon arrival at police headquarters, it was discovered that the appellants were juveniles. The appellants were then read their juvenile rights. Appellants then elected to make another statement. The first statement, taken prior to the appellants' being informed of their juvenile rights, was taped over and was not used.
A similar issue was addressed by the United States Supreme Court in Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285,84 L.Ed.2d 222 (1985). In Elstad, the defendant made a statement prior to being informed of his Miranda rights. After he was read his rights, he elected to make another statement. The defendant then challenged the admissibility of the second statement, alleging that because he had already made one statement he felt compelled to make another. The Supreme Court disagreed, holding:
 "[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion. A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. In such circumstances, the finder of fact may reasonable conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights."
470 U.S. at 314, 105 S.Ct. at 1296. See also, Petite v. State,520 So.2d 207, 210 (Ala.Cr.App. 1987).
Because Alabama's juvenile warning is so similar to theMiranda warning, we find that the holding and interpretation of constitutional principles in Elstad applies to juvenile warnings as well as Miranda warnings. Accordingly, the mere fact that the appellants made a statement to police prior to being informed of their juvenile rights under Rule 11, A.R.J.P., but after having waived their Miranda rights, does not preclude admission of the subsequent statements made after the appellants had been informed of the juvenile rights and had chosen to waive them.
Even if the statements made by appellant White and Cleveland were inadmissible, as they argue, the juvenile court would still have had sufficient probable cause to transfer these cases to the circuit court. No reason exists to reverse the court's decision to transfer appellants' cases to circuit court.
 II
Appellants also argue that the Rule 11(A), A.R.J.P., rights are in themselves "coercive."
 "Rule 11(A)(1), (2), and (3), taken together, are substantially the same as the warnings required in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). By virtue of Rule 11(A)(4), Alabama has included an additional warning for the protection of juveniles."
Taylor v. State, 491 So.2d 1042, 1044 (Ala.Cr.App. 1986). Surely, Miranda rights are not coercive.
The juvenile court committed no error in transferring this case to the Circuit Court of Montgomery County. The juvenile court's decision is, therefore, due to be affirmed.
AFFIRMED.
All the Judges concur. *Page 305