After being transferred from juvenile court to circuit court for prosecution as an adult, Earnest Jerome Hogan, the appellant, was indicted, along with codefendants Sylvester Ephraim and Nathaniel Gilder, for capital murder in the deaths of Lena and Napoleon Goodson. The appellant entered a guilty plea to the capital offense of murder committed during the course of a robbery.
A jury was empaneled, pursuant to Ala. Code 1975, § 13A-5-42, and the State proved the appellant's guilt of the capital offense beyond a reasonable doubt. The appellant waived jury participation in sentencing, and the circuit court, after conducting a hearing pursuant to Ala. Code 1975, § 13A-5-45, sentenced the appellant to life imprisonment without parole. On this direct appeal of his conviction, the appellant raises three issues, which he reserved for appeal prior to pleading guilty.
 I
First, the appellant claims that blacks were underrepresented in the jury pool from which the grand jurors who indicted him were selected and that, consequently, the trial court erred in denying his motion to quash the indictment.
Randy Helms, Court Operations Supervisor at the Administrative Office of Courts (AOC), testified that Autauga County uses a one-step jury selection system in which AOC randomly selects jurors from a list of driver's license holders in the county. In July 1990, the master jury list for Autauga County consisted of 22,244 names. Of that number, 19,032 were white, 3,157 were black (14.19%), and 55 were of other minority groups. R. Vol. 4 at 8-9. According to the 1980 census, blacks comprised 19.86% of the population of Autauga County.
Autauga Circuit Clerk Fred Posey testified that the grand jury that indicted the appellant was empanelled from an AOC-generated list of 175 jurors, 154 of whom were white and 21 of whom were black. R. Vol. 4 at 18. The appellant's grand jury was composed of 17 white persons and 1 black person. R. Vol. 4 at 22.
We addressed all of the fair cross-section arguments made by the appellant in Sistrunk v. State, 630 So.2d 147 (Ala.Cr.App. 1993):
 The Sixth Amendment requires that petit juries 'be drawn from a source fairly representative of the community.' Taylor v. Louisiana, 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975). When raising a claim under this requirement, a defendant 'has the burden of establishing a prima facie case of a "fair cross section" violation. Rayburn v. State, 495 So.2d 733 (Ala.Crim.App. 1986).' Pierce v. State, 576 So.2d 236, 241 (Ala.Cr.App. 1990), cert. denied, 576 So.2d 258 (Ala. 1991). In Duren v. Missouri 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the United States Supreme Court held that a defendant seeking to establish a prima facie case of a violation of the fair cross-section requirement must demonstrate the following three elements: *Page 1019 
 " '(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.' "
 439 U.S. at 364, 99 S.Ct. at 668. While the appellant established that blacks are 'a "distinctive" group in the [Dale County] community,' see Lee v. State, 631 So.2d 1059
(Ala.Cr.App. 1993), it is clear that he has failed to establish the last two of the three Duren
elements.
 "The third Duren element — that there has been a systematic exclusion of a distinctive group — constrains a defendant to establish that 'the cause of the underrepresentation was . . . inherent in the particular jury-selection process utilized.' " Duren, 439 U.S. at 366, 99 S.Ct. at 669. In this case, the appellant established that the original venire was obtained by random selection from the list of licensed drivers in Dale County. Random selection from a list of licensed drivers has been held to be an acceptable manner in which to select a venire. See Stewart v. State, 623 So.2d 413
(Ala.Cr.App. 1993); Joyce v. State, 605 So.2d 1243, 1245 (Ala.Cr.App. 1992). . . .
 "It is true that the particular panel from which the appellant's jury was struck contained a substantially smaller percentage of blacks than does the population of Dale County. However, the fair cross-section requirement 'ensures only a venire of randomness, one free of systematic exclusion. It does not ensure any particular venire.' Note, United States v. Gelb: The Second Circuit's Disappointing Treatment of the Fair Cross-Section Guarantee, 57 Brook. L.Rev. 341, 343 n. 7 (1991). 'Rather than being entitled to a cross-sectional venire,' a defendant 'has a right only to a fair chance, based on a random draw, of having a jury drawn from a representative panel.' Comment, The Cross-Section Requirement and Jury Impartiality, 73 Cal.L.Rev. 1555, 1565 (1985). See Johnson v. State, 502 So.2d 877, 880 (Ala.Cr.App. 1987) (venire need not be ' "a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group" '). Cf. United States v. Percival, 756 F.2d 600, 615 (7th Cir. 1985) ('It is the master jury wheel, not the actual grand jury, which must represent a fair cross section of the community. So long as the master jury wheel is adequate and the prescribed procedure is thereafter followed, there can be no complaint that the panel ultimately produced by random selection is somehow underrepresentative in result.') (citations omitted).
 "In this case, 7 of the 11 blacks in the original venire had been selected to sit on another petit jury when the appellant's jury was struck. The fact that they were not available as part of the appellant's panel is attributable only to the 'luck of the draw,' rather than to anything 'inherent' in the selection process.
". . . .
 " 'In the absence of a showing of systematic exclusion, the showing of a disparity between the percentage of blacks in the population of the county in which venue is situated and the percentage of blacks on the venire does not establish a violation of the fair cross-section requirement.' Stewart v. State, 623 So.2d 413
(Ala.Cr.App. 1993). Moreover, with regard to the second and third Duren elements, a defendant asserting a fair cross-section violation 'must demonstrate . . . not only that [blacks] were not adequately represented on his jury venire, but also that this was the general practice in other venires.' Timmel v. Phillips, 799 F.2d 1083, 1086
(5th Cir. 1986). Accord Comment, 73 Cal.L.Rev. at 1565 ('Both federal and state law will infer a systematic flaw only from significant underrepresentation on a number of previous venires. This policy presumably reflects a conviction that an individual instance of underrepresentation might be a coincidence, whereas a pattern will betray a systematic procedural abuse.') (footnotes omitted). . . . The appellant has simply failed to prove a prima facie case of a fair cross-section violation."
Sistrunk v. State, 630 So.2d at 149-50.
The circuit court did not err by denying the appellant's motion to quash the indictment on fair cross-section grounds. *Page 1020 
 II
The appellant was first questioned about the murders of Mr. and Mrs. Goodson on June 12, 1990. At the time, the appellant was sixteen years old. He told Lt. Roger Mullins of the Autauga County Sheriff's Department, however, that he was born in 1971, which would have made him 19 years old. Relying on that information, Lt. Mullins read the appellant the rights guaranteed an adult under Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), rather than the "juvenileMiranda rights" set forth in Rule 11(A), Ala.R.Juv.P.
The appellant gave an incriminating statement, which was audiotaped on June 12. The following day, Lt. Mullins learned the appellant's true age, read him the Rule 11(A) juvenileMiranda rights, and videotaped another statement by the appellant. The second statement was also incriminatory. The circuit court granted the appellant's motion to suppress his first (audiotaped) statement, but ruled that the second (videotaped) statement was voluntary and admissible.
The appellant argues that his second statement was inadmissible because, he says, it was tainted by the failure to administer the proper warnings to him before he made the first statement. Contending that his low IQ prevented him from knowingly and intelligently waiving his rights before giving either statement, he also argues that both statements were involuntary.
We reject the appellant's first argument on the authority ofOregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222
(1985), Cleveland v. State, 555 So.2d 302, 304 (Ala.Cr.App. 1989), and Scott v. State, 555 So.2d 763 (Ala.Cr.App. 1988).
In Scott, this court approved the following analysis by the trial court:
 "The Court finds that even if the statement by the defendant to Officer Sharp was inadmissible because of a failure to give the complete warning under Rule 11(A), [Ala.R.Juv.P.,] the second statement to Nesmith and Lee would not necessarily be rendered inadmissible as a result. In Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the United States Supreme Court held that a statement given after proper Miranda
warnings is not tainted by an earlier unwarned statement where both statements are voluntary. Where the Juvenile Miranda warnings of Rule 11(A) are a creation of a State law, because the similarity of purpose with the federal constitutional requirements it is appropriate to apply a similar rule here. The voluntariness of the second statement to Nesmith and Lee has been determined and that decision has been upheld by the Court of Criminal Appeals, Scott v. State, 501 So.2d 1273 (Ala.Cr.App. 1986); it thus need only be determined whether the first statement to Sharp was also voluntary."
Scott v. State, 555 So.2d at 766-67.
At the transfer hearing in juvenile court, the State offered the testimony of Dr. Kathy Rogers, a clinical psychologist at Taylor Hardin Secure Medical Facility. Based on a battery of tests she administered to the appellant, Dr. Rogers stated that the appellant, who has an IQ of 73, was in the borderline range of mental retardation. Dr. Rogers gave her opinion that the appellant had "a good deal of 'street smart' knowledge." R. 134.
At the hearing on the motion to suppress, the defense presented the testimony of clinical psychologist Dr. John R. Goff, who found that the appellant was mildly mentally retarded, with an IQ of 69. Dr. Goff testified that the appellant had a poor ability to understand abstract concepts. In his opinion, the appellant did not comprehend theMiranda warnings or understand the waiver of rights forms he signed. Goff said that people who are mildly mentally retarded tend to be rather compliant. On the other hand, Goff testified that the appellant's test scores on the Minnesota Multiphasic Personality Inventory indicated "a considerable degree of suspiciousness in feelings that people are out to get him," R. 125, a result that the trial court could have found was at odds with a tendency toward compliance.
In Dobyne v. State, [Ms. CR-91-1840, April 15, 1994] ___ So.2d ___ (Ala.Cr.App.), on remand, [Ms. CR-91-1840, June 17, 1994] ___ So.2d ___ (Ala.Cr.App. 1994), expert *Page 1021 
psychological testimony established that the accused had an IQ of 73, which put him in the borderline mentally retarded range. There was also testimony that he could not understand theMiranda warning. Upholding the admission of the accused's statement, this court observed:
 " '[A] defendant's mental impairment, even if it exists, is merely one factor affecting the validity of his waiver of rights and the voluntariness of his confession. See generally Annot., 8 A.L.R.4th 16 (1981). "While an accused's intelligence and literacy are important factors to be considered in determining whether he intelligently and voluntarily waived his constitutional rights and made a confession, weak intellect or illiteracy alone will not render a confession inadmissible." Hobbs v. State, 401 So.2d 276, 282 (Ala.Cr.App. 1981).' Whittle v. State, 518 So.2d 793, 796-97 (Ala.Cr.App. 1987)."
Dobyne v. State, ___ So.2d at ___.
 " 'It is well settled that the mere fact that a defendant is functionally illiterate or simple-minded will not vitiate the voluntariness of his confession. Cliff v. State, 518 So.2d 786
(Ala.Cr.App. 1987). The low mentality of a defendant should go to the weight and credibility of the confession rather than to its admissibility. Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967). A defendant's mental impairment, even if it exists, is merely one factor affecting the validity of his waiver of rights and the voluntariness of his confession. Whittle v. State, 518 So.2d 793
(Ala.Cr.App. 1987); Sasser v. State, 497 So.2d 1131
(Ala.Cr.App. 1986). See generally, Annot. 8 A.L.R.4th 16 (1981).' Lewis v. State, 535 So.2d 228, 235 (Ala.Cr.App. 1988)."
Prince v. State, 584 So.2d 889 (Ala.Cr.App. 1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992).
In ruling that the appellant's waiver of rights was knowing and intelligent and that his decision to speak to law enforcement authorities was voluntary, the circuit court observed:
 "I have to make a call as to whether Earnest understood his rights and knowingly and intelligently gave those rights up. I have to make that call. And I think I would be remiss in making that decision if it were not on this record that this judge has had previous contact with this defendant and that I have done those things [explained his rights to him] and I have gone over those things with this defendant. And I have worked with him before. And I think that we would have an incomplete record if it wasn't straight for purposes of the record with what I know and my experience with this defendant before this case ever came up." R. 147-48.
"The findings of the trial court as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed on appeal unless 'manifestly contrary to the great weight of the evidence.' Ex parteMatthews, 601 So.2d 52, 53 (Ala.), cert. denied, 505 U.S. 1206,112 S.Ct. 2996, 120 L.Ed.2d 872 (1992)." Nelson v. State,623 So.2d 432, 435 (Ala.Cr.App. 1993). This Court has listened to the appellant's first (audiotaped) statement and viewed the appellant's second (videotaped) statement. Both appear to have been made voluntarily with full awareness of the rights the appellant was giving up in deciding to cooperate with law enforcement authorities. Our review of the statements satisfies this Court that the circuit court's findings were not contrary to the evidence, and that there was no error in the denial of the appellant's motion to suppress.
 III
The appellant frames his third argument as follows: "The defendant did not receive due process or equal protection in being transferred from juvenile to circuit court, including but not limited to the admission of his involuntary statements." Appellant's Brief at 36.
We have addressed the appellant's argument that his statements were involuntary. Prior to the entry of his guilty plea, the only other issue relating to the appellant's transfer from juvenile court that was brought to the circuit court's attention had to do with the fact that the petition in juvenile court charged the appellant with noncapital *Page 1022 
murder while, after transfer, the appellant was indicted for the capital offense.
"The question of whether a juvenile who has been certified to be tried as an adult can be indicted for capital murder when the juvenile court found probable cause that the juvenile committed noncapital murder has been answered affirmatively by this Court in Kinder v. State, 515 So.2d 55 (Ala.Cr.App. 1986)." Tolbert v. State, 598 So.2d 1011, 1012 (Ala.Cr.App. 1991). See also Robinson v. State, 621 So.2d 389, 391
(Ala.Cr.App. 1993). No other issues relating to the appellant's transfer were reserved for appeal prior to the entry of his plea. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.