751 So.2d 529 (1999)
J.W.
v.
STATE.
CR-98-0440.
Court of Criminal Appeals of Alabama.
May 28, 1999.
Rehearing Denied July 9, 1999.
Certiorari Denied October 15, 1999.
*530 Paul R. Cooper, Montgomery; and Mary Dixon Torbert, Montgomery, for appellant.
Bill Pryor, atty. gen., and Beth Slate Poe, Montgomery, for appellee.
Alabama Supreme Court 1981743.
COBB, Judge.
J.W. appeals the transfer of his case from the Juvenile Court of Montgomery County to the Circuit Court of Montgomery County. J.W. is charged with capital murder, see § 13A-5-40(a)(2), Ala.Code 1975, and with conspiring to commit robbery in the first degree, see § 13A-4-3, Ala.Code 1975. On appeal, J.W. contends (1) that the juvenile court erred by denying J.W.'s motion to suppress his videotaped statement and (2) that the juvenile court erred by granting the State's motion to transfer because, he argues, the only evidence supporting the transfer was his inadmissible videotaped confession.

Facts
Detective Guy Naquin with the Montgomery Police Department began investigating John Smith's murder when the department received an anonymous tip concerning a possible suspect. While checking the reliability of the tip, Detective Naquin obtained information indicating that J.W. had shot and killed Mr. Smith. He also received names of other people who may have been involved. (R. 26-27.) Detective Naquin verified the information received by the anonymous caller by interviewing the source of the information, Delores Manning. His conversation with Manning led him to Andy Crawford, another participant in the crime, whom he also interviewed. Both Manning and Crawford implicated J.W. as the one who had killed Mr. Smith.
Armed with the information received from Manning, Crawford, and the tipster, Detective Naquin obtained a juvenile petition. On August 18, 1998, at 4:30 p.m., Detective Naquin went to the Air Base Youth Facility, where J.W. was participating in boot camp, and obtained an arrest warrant. One of the staff members brought J.W. to the main office, and without showing J.W. the arrest warrant, Detective Naquin informed J.W. that he was placing him under arrest for the capital murder of John Smith. He then placed him in handcuffs. Detective Naquin did not advise J.W. of his right to contact his parents or a lawyer or any of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), at the Air Base Youth Facility. As Detective Naquin was escorting J.W. to the police car, J.W. made an allegedly incriminating statement without any encouragement or questioning by Detective Naquin.[1] (R. 28-35.) J.W. was transported to the police station, where he was advised of his adult and juvenile Miranda rights, including his right to communicate with a parent or an attorney. J.W. signed a waiver of rights form and was subsequently interviewed about his knowledge of John Smith's murder. (C. 9; R. 42.) J.W. confessed to shooting Mr. Smith; he said that he shot Mr. Smith while his uncle was attempting to rob Mr. Smith. This confession was videotaped. Before the videotape of his confession, J.W. was again advised, verbally and in writing, of his juvenile Miranda rights, and he waived these rights. (R. 36-43.)

I.
J.W. argues that the juvenile court should have granted his motion to suppress *531 his videotaped statement. He contends that the videotaped statement should have been suppressed because, he says, it was tainted by the statement J.W. made at the Air Base, which, he argues, was not admissible. J.W. asserts that his first incriminating statement was illegally obtained because Detective Naquin failed to advise him of his rights, as enumerated in Rule 11(a)(2), Ala.R.Juv.P., as soon as J.W. was taken into custody.
A trial judge's decision concerning a motion to suppress will not be reversed on appeal, unless it is "manifestly contrary to the great weight of the evidence." Ex parte Matthews, 601 So.2d 52, 53 (Ala.1992). In reviewing the juvenile judge's decision, "this court must make all reasonable inferences and credibility choices in support of the [juvenile judge's] ruling." Allen v. State, 689 So.2d 212, 216 (Ala.Cr.App.1995).
The juvenile judge's decision to deny J.W.'s motion to suppress the videotaped confession was not manifestly contrary to the great weight of the evidence. The statement J.W. made at the Air Base was not illegally obtained; thus, his confession was not tainted by that statement.

A.
Rule 11(A), Ala.R.Juv.P., provides: "When the child is taken into custody, the person taking the child into custody must inform the child of the following:
"(1) The reason for the child's being taken into custody;
"(2) That if the child's counsel, parent, or guardian is not present, then the child has the right to communicate with them, and that, if necessary, reasonable means will be provided for the child to do so."
The Comment to Rule 11 states:
"This rule clarifies the child's rights at the different phases of the case. Subsection (A) enumerates the rights a child must be given as soon as the child is taken into custody."[2]
See, also, Flynn v. State, 745 So.2d 295, 300 (Ala.Cr.App.1999) (citing Ingram v. State, 729 So.2d 883, 891 n. 1 (Ala.Cr.App. 1998)).
The record indicates that when Detective Naquin took J.W. into custody at the Air Base, he informed him of why he was being taken into custody, but he did not inform J.W. of his right to contact his parents or a lawyer until J.W. arrived at the police station. J.W. argues that the detective was required to inform him of this right at the moment he was taken into custody at the Air Base. We hold that J.W.'s argument is without merit because Detective Naquin complied with the requirements of Rule 11(A), Ala.R.Juv.P., before J.W. was questioned.
Rule 11(A), Ala.R.Juv.P., is a rule of procedure: it outlines the procedure that must be followed by a police officer who has taken a juvenile into custody. We have previously held that when interpreting a rule of procedure, we must give the wording of the rule its plain meaning. See Ex parte City of Montgomery, 721 So.2d 261, 262 (Ala.Cr.App.1998) (interpreting Rule 30.5(b), Ala.R.Crim.P.). There is no wording in Rule 11(A) that requires the person taking the child into custody to inform the child of the right to contact his parents or a lawyer immediately when the child is taken into custody. The rule says "When a child is taken into custody," not "at the moment the child is taken into custody" or "immediately upon being taken into custody." The Comment following Rule 11(A), Ala.R.Juv.P., does, however, say that the rights must be given "as soon as the child is taken into custody." Thus, there is a discrepancy between the plain language of the rule and the Comment to the rule. The Supreme Court has previously *532 addressed this issue when it interpreted a conflict between a rule of civil procedure and the comments following the rule. See Ex parte Anderson, 644 So.2d 961, 963 (Ala.1994) (interpreting Rule 27, Ala.R.Civ.P.). The Court held that a statement in the comments to a rule of civil procedure does not take precedence over the plain language of the rule. See id. This same principle applies to the Rules of Juvenile Procedure. Because the clear language does not contain wording that requires an immediate reading of rights when a child is taken into custody, we will not interpret the rule to require such immediacy.
The record demonstrates that Detective Naquin complied with Rule 11(A), Ala.R.Juv.P., by informing J.W. of his rights, provided in Rule 11(A), before J.W. was questioned. Detective Naquin's conduct did not infringe upon the rights that Rule 11 seeks to protect. The purpose of Rule 11, Ala.R.Juv.P., as identified in the Comment following the rule, is to clarify a child's rights at different phases of a criminal case. Thus, Detective Naquin supported the intent behind promulgating the rule when he informed J.W. of his right to contact his parents or an attorney at the police station before any questioning occurred. See generally Dutell v. State, 596 So.2d 624, 625 (Ala.Cr.App.1991) (setting out rules of construction for the Alabama Rules of Criminal Procedure).
Moreover, the record indicates that J.W. was taken into custody at 4:30 p.m. Detective Naquin transported J.W. to the police station, and he then informed him of his rights under Rule 11(A) and 11(B), Ala. R.Juv.P. J.W. waived these rights by signing a waiver form. The time noted on the waiver form is 5:10 p.m., only 40 minutes after he was taken into custody at the Air Base. (Supp. R. 1.) When considering that during the 40-minute time period, Detective Naquin escorted J.W. to the police car and then transported him to the police station, very little time elapsed before he was informed of his rights. Thus, the length of time that expired before Detective Naquin complied with Rule 11(A) did not prejudice the rights of J.W. Because the requirements of Rule 11(A) were upheld, J.W.'s first statement was properly admissible. It is also important to note the statement in the Comment to Rule 11, which states, "Rule 11 anticipates that a child will be questioned when taken into custody." See, also, Traylor v. State, 565 So.2d 1224, 1226 (Ala.Cr.App.1990). Even though it is undisputed that J.W. was in a custodial situation, he was not being "questioned" by Detective Naquin before they arrived at the police station.
In addition, even if Detective Naquin should have informed J.W. of his Rule 11(A) rights the moment he took J.W. into custody, J.W.'s first statement would have been properly admissible as a voluntary statement. "`"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."'" Ex parte Clark, 728 So.2d 1126, 1132 (Ala.1998). This rule applies to information that is volunteered "either before or after being given Miranda warnings." Id. This principle is applicable to adult defendants, as well as juveniles. See Atchison v. State, 565 So.2d 1186, 1188 (Ala.Cr.App.1990). The statement made by J.W. to Detective Naquin at the Air Base was unsolicited. Detective Naquin was not provoking J.W. or asking him questions; thus, the statement was not the result of a coercive police tactic. See Cleveland v. State, 555 So.2d 302, 304 (Ala. Cr.App.1989) ("`[A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.'").

B.
Because J.W.'s first statement was admissible, it does not affect the admissibility of his videotaped confession. Moreover, even if Detective Naquin's delay in informing J.W. of his right to contact his parents *533 or an attorney was viewed by this court as a violation of Rule 11(A), Ala.R.Juv.P., it would not necessarily follow that J.W.'s first statement tainted his second statement, his videotaped confession. For example, we have held that statements made before the giving of juvenile Miranda rights, pursuant to Rule 11(B), Ala.R.Juv. P., and not 11(A), do not always taint the admissibility of subsequent statements made after Miranda warnings are given. See Hogan v. State, 663 So.2d 1017, 1020 (Ala.Cr.App.1994) (citing Oregon v. Elstad, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) and Cleveland v. State, 555 So.2d 302, 304 (Ala.Cr.App.1989)). In Hogan, we held that if the first incriminating statement was voluntary, it did not affect the admissibility of a subsequent voluntary statement made after the accused was advised of Miranda rights. See id. This is analogous to the facts in this case, except in this case we are dealing with a procedural rule instead of a constitutional guarantee. As discussed above, J.W.'s first statement was, in fact, voluntary, and the voluntariness of J.W.'s videotaped confession is undisputed. Thus, the juvenile judge properly denied J.W.'s motion to suppress the videotaped confession.

II.
J.W. argues that the juvenile judge erred when it granted the State's motion to transfer J.W.'s case to the Circuit Court of Montgomery County. Specifically, he contends that the only evidence supporting the transfer of his case was his videotaped confession, which, he argues, is inadmissible.
"A determination by a juvenile court that a juvenile should be transferred to circuit court will be reversed only if it is arbitrary and capricious." J.F.B. v. State, 729 So.2d 355, 358 (Ala.Cr.App.1998). We have already determined that the videotaped confession was voluntary and was not tainted by his previous statement, which was also voluntary. In addition, his confession was corroborated with other evidence at the transfer hearing. See § 12-15-66(b), Ala.Code 1975 (requiring corroboration when an extrajudicial confession by a juvenile is admitted). In his videotaped confession, J.W. admitted to going to Mr. Smith's apartment with his uncle "under the guise of trying to buy alcohol with the intent of robbing [him]." He further admitted that he demanded money from Mr. Smith, pointed a gun at Mr. Smith's head, and shot Mr. Smith in the head. (R. 48) James Lauridson, a state medical examiner, determined that Mr. Smith died as the result of a gunshot wound to the brain. Detective Naquin testified that he had obtained information implicating J.W. as the killer from an anonymous tipster, from Delores Manning, the source of the anonymous tip, and from Andy Crawford, J.W.'s uncle, who was a participant in the robbery/murder. Because the confession was voluntary and corroborated by other evidence at the transfer hearing, it was properly admissible.
For the above-mentioned reasons, the judgment of the Juvenile Court of Montgomery County is due to be, and is hereby, affirmed.
AFFIRMED.
LONG, P.J., and McMILLAN, BASCHAB, and FRY, JJ., concur.
NOTES
[1] The actual subject matter of the statement made by J.W. while he was being escorted to the police car is unclear from the record. This statement was never admitted during the transfer hearing.
[2] This rule was amended, effective May 1, 1994. Prior to this amendment, Subsection (A) also contained the "SuperMiranda" warnings, which are now contained in Subsection (B).